UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


UNITED STATES OF AMERICA

v.                                   CRIMINAL ACTION NO. 2:05-00064

CHADRICK ROGERS


<u>MEMORANDUM OPINION AND ORDER</u>


Pursuant to the Defendant's Motion to Suppress
Evidence, filed on May 10, 2005, and the evidentiary hearing
conducted on June 8, 2005, the court by a preponderance of the
evidence makes the following findings of fact, in addition to the
conclusion of law that follows.


I.


On February 13, 2004, Michelle Thaxton was living with
the defendant, Chadrick L. Rogers, and their three-year-old
daughter at the defendant's home on Tawney Hollow Road in Roane
County, West Virginia.  Ms. Thaxton and the defendant became
engaged in an argument with each other at that time.  The
defendant kicked her and threatened her by putting a gun to her
head.  She fled the home and called the Roane County Sheriff,
Todd Cole, to report the incident at about 6:00 p.m. of that same
day.  Sheriff Cole took a statement from her about 7:00 p.m.  At

about 11:00 p.m., a search warrant was obtained to search the defendant's home for the weapon that was used by him to threaten Ms. Thaxton and a warrant was issued for the defendant's arrest.

Sheriff Cole and Sgt. Eldridge then went to defendant's home about 11:50 p.m. to arrest him and execute the search warrant for the weapon.  They found no one there.  They then went back to the mouth of Tawney Hollow where they met Ms. Thaxton who suggested that the defendant would likely be at Tim Jones' house if the defendant's vehicle was located there.  The defendant's house and Tim Jones' house are the last two up the hollow, which is about 1500 feet in length and has five houses on it, with Tim Jones' house being the last one and located well beyond the defendant's house.

Sheriff Cole and Sergeant Eldridge proceeded to the Jones house where they saw a vehicle that matched the description of the defendant's vehicle given to them by Ms. Thaxton.  They knocked on the door.  There was no answer, though they detected a strong chemical odor emanating from the Jones house.  They left and went back to the mouth of the hollow where, about five or ten minutes after midnight on February 14, 2004, they heard several gunshots which seemed to be coming from the general area of the Jones house about 900 feet away.  Sheriff Cole then called for

backup and stationed personnel at the mouth of the hollow to see that no one came or went.  During the next three hours or so a special response team of some six to eight officers was formed by state and county law enforcement officers who were brought in from locations some distance away to an assembly point about a mile from Tawney Hollow.  Sheriff Cole acknowledges that he had sufficient time during this period to obtain a search warrant to search Tim Jones' house for the defendant.  Sheriff Cole did not do so because the county prosecuting attorney, whom he called for advice, told him that under the circumstances it was unnecessary.

At sometime between 3:30 and 4:00 a.m., after first checking the defendant's house to be sure he had not returned, the special response team of 6 or 8 officers arrived at the Jones house and, as planned, entered the rear door while Sheriff Cole and two or three other officers entered the front door.  The officers found the owner, Tim Jones, and three other individuals in the house.  The other three were the defendant, Michael Depue and an individual living there along with Jones, John Pierson. The defendant was found there in possession of a firearm.  A methamphetamine laboratory was also observed inside the Jones house.  The defendant was placed under arrest and the others were taken into custody.  The officers left Jones' house and Sheriff

3

Cole proceeded to obtain a search warrant for the meth lab seen at the Jones house.  It was issued at about 7:00 a.m. on February 14, 2004, whereupon he returned to the Jones house to execute the search warrant.

## II.

The defendant had come to Tim Jones' house on February 13, 2004, between 6:00 and 8:00 p.m.  The defendant came there with Dave Rhodes and Michael Depue and as they entered said, "We're here."  They carried duffel bags and went to the back bedroom that they used on a regular basis for the purpose of making meth.  Although none of them were welcome by the owner, Tim Jones, he let them stay both out of fear for his own safety and perhaps because it was their practice to share with him for his personal use some of the meth about to be produced.  Jones had tried to run them off before and he was wary of them, but because they were "three guys with guns" he acceded to their presence from the time they got there until the law enforcement authorities arrived at near 4:00 a.m.  They were making meth throughout the time they were in Jones' house.  Dave Rhodes, however, left before the special response team arrived.

On this occasion, as on other occasions when the defendant and his meth-making companions came to Jones' house, they did not sleep over, there was no changing of clothes, they would be there anywhere from three hours until as long as 7 or 8 o'clock the next morning, and any toothbrush brought along was for the purpose of making meth.  The manufacture of methamphetamine was the defendant's reason for being there.

The defendant's presence and that of his two compatriots in the Jones house on the evening of February 13, 2004, and the early morning hours of February 14, 2004, was solely for the commercial purpose of manufacturing methamphetamine.  Their presence was tolerated by the owner of the house out of fear for his own safety and he was rewarded by receiving part of the product for his own personal use.

### III.

The court concludes that the defendant was present in the Jones house at the time of his arrest as an unwelcome guest who had no reasonable expectation of privacy in the Jones house. Consequently, the defendant has no basis to complain of a Fourth Amendment violation of his rights inasmuch as there was none. The defendant was lawfully placed under arrest in the Jones house pursuant to the warrant that was issued for that purpose. Accordingly, the motion to suppress is denied.

The Clerk is directed to forward copies of this written

opinion and order to the defendant and all counsel of record.


DATED:   June 21, 2005



John T. Copenhaver, Jr.
United States District Judge

6